UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| SERVICE EMPLOYEES INTERNATIONAL UNION, *et al*,     *Plaintiffs*, <br><br> v. <br><br> CITY OF HOUSTON, *et al.*     *Defendants*. | § § § § § § § § | CIVIL ACTION NO. H-06-3309 |

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

In accordance with the preliminary injunction issued on October 24, 2006, and the hearing held on that date, the court makes the following findings of fact and conclusions of law under Federal Rule of Civil Procedure 52(a).[1]

### FINDINGS OF FACT

1. The plaintiff Service Employees International Union, Local 5 ("Local 5"), is a labor organization based in Houston, Texas. Local 5 brings its claims on its own behalf and on behalf of its approximately 1,000 dues paying members.

2. The plaintiffs Tomasa Compean and Austraberta Rodriguez work as janitors, and are part of the Local 5 bargaining committee currently bargaining over a contract for approximately 5,300 janitors in Houston. Compean and Rodriguez both reside in Houston, Texas.

3. The defendant City of Houston, Texas, enacted and enforces the ordinances at issue here, the Parade Ordinance and the Sound Ordinance.

---

[1] To the extent that any finding of fact is more properly characterized as a conclusion of law, or vice versa, the court adopts it as such.

4.     The defendant Bill White is being sued in his official capacity as Mayor of the City of Houston. In that capacity, White has responsibility for enforcing the City of Houston Code of Ordinances.

5.     The defendant Tina Paez is being sued in her official capacity as Assistant Director of the City of Houston Department of Finance and Administration. In that capacity, Paez has responsibility for granting or denying permits under the Sound Ordinance, Section 30-8.

6.     The defendant Michael S. Marcotte is being sued in his official capacity as Director of the City of Houston Department of Public Works and Engineering. In that capacity, Marcotte has responsibility for granting or denying permits under the Parade Ordinance, Sections 45-231 through 45-246.

7.     The defendant Joe Turner is being sued in his official capacity as Director of the City of Houston Department of Parks and Recreation. In that capacity, Turner has responsibility for granting or denying permits under the Parks Ordinance. The Parks Ordinance is at issue in the underlying suit, but not the subject of the preliminary injunction issued on October 24, 2006.

8.     Local 5 has been in contract negotiations for a labor contract between the janitors represented by Local 5, and the management companies of over 300 office buildings in the Houston area. The negotiations reached an impasse as of October 17, 2006.

9.     Local 5 planned a strike to commence on October 23, 2006 accompanied by parades, demonstrations, and rallies in the downtown and other business areas of the city to draw attention to the break down in negotiations. Pursuant to those plans, Local 5 applied for sound amplification permits under Sound Ordinance Section 30-8, and parade permits under Parade Ordinance Sections 45-231 through 45-246.

## A. The Sound Ordinance

10.   Section 30-8 of the Sound Ordinance states in relevant part:

Section 30-8. Permit required for use of outdoor sound amplification equipment.

(a)   No person shall use or cause to be used any loudspeaker, loudspeaker system, sound amplifier, or any other machine or device that produces, reproduces, or amplifies sound outside of buildings or other enclosed structures in a manner that exceeds the levels specified in section 30-6, when measured from the property where the sound is being received, without first obtaining a permit to do so. The permit shall be granted only for the amplification of music or human speech, or both. The permit:

• • •

(4)   Shall not be issued to the same or any other person for the same location more than twice during any 30 day period.

Section 30-8(a)(4).

11.   Section 30-6 requires that the maximum permissible sound level for nonresidential property is 68 dB(A) at all times. Section 30-6 does not make any distinctions among the types of non-residential properties.

12.   Section 30-8 limits all permits to the 14 hour period between 8:00 a.m. and 10:00 p.m. Section 30-8 makes no distinctions regarding the content of the sound being amplified other than to specify its applicability to human speech and music only.

13.   When members of Local 5 attempted to use bullhorns and/or megaphones in demonstrations, they were stopped by City of Houston police and informed that in order to use the devices, Local 5 would need to procure sound amplification permits from the city.

14.   According to Local 5's testimony, no sound measurement was taken before the police officers instructed Local 5 that the bullhorns were in violation of the sound amplification ordinance. The bullhorns were not equipped with a decibel gauge.

15.   A City of Houston police officer testified that police officers are not normally equipped with equipment capable of measuring decibel levels of sound.

16.     When Local 5 applied for the sound amplification permits, one of its applications was denied because permits had been issued for the same place twice within a 30 day period.

17.     Local 5 sued the city under 42 U.S.C. § 1983 alleging that section 30-8 violates the First Amendment to the United States Constitution by limiting the number of permits to two per 30 day period. Local 5 alleges that this limitation is unconstitutionally overbroad.

18.     The City of Houston argues that the sound regulation is a reasonable, content neutral time, place, and manner regulation that leaves open ample alternative avenues of expression. The city argues that Local 5 may use bullhorns at sound levels less than 68 dB(A) or unamplified sound at any time without a permit.

### B. The Parade Ordinance.

19.     The City of Houston Parade Ordinance defines a parade as:

> Parade means a procession of pedestrians, vehicles, animals or any combination thereof along or upon a street, road, or highway, but shall not mean a funeral procession, a government sanctioned motorcade, or a procession of pedestrians along or upon public sidewalks or private property and shall not mean a procession of vehicles operated in compliance with ordinary traffic laws.

Section 45-231. Section 45-244 does allow exemptions for groups of people numbering less than 250, but they must also (1) not contain more than 12 vehicles, (2) not contain any unlicenced animals, (3) not exceed a mile in parade length and include no major thoroughfares, collector streets or downtown streets, (4) comply with the time restrictions for parades outside of downtown, (5) take no longer than one hour to complete, (6) provide their own traffic control, and (7) notify the city in writing at least 72 hours in advance. Section 45-244.

20.     The city admitted that as few as two people walking in the street in downtown constitutes a parade under this definition. The city also admitted that a parade can be made up entirely of cars, or bicycles with no pedestrians.

21. The Parade Ordinance does not restrict processions or gatherings of people on the sidewalks.

22. Funeral processions and motorcades are excluded from the definition of a parade. The city argued that funeral processions and motorcades do not try to attract attention to themselves as they pass, and therefore require different treatment.

23. Funeral processions are allowed to break some traffic laws, have fewer time or date restrictions, and no geographic restrictions. Funeral processions require no permit. *See* Funeral Processions, Sections 45-251 through 45-258.

24. The Parades and Processions article of the City of Houston Ordinances contains no regulations for government sanctioned motorcades.

25. Section 45-235(b)(1) of the Parade Ordinance allows the city ten business days in which to notify the parade applicants in writing of the denial of a parade permit.

26. The city admits that it can make the determination of whether a parade application will be denied within two days time. In fact, Local 5's parade applications in this case were denied in 1 day's time. The city further admits that the police department's time-consuming preparation for a parade commences after the permit decision has been made.

27. Section 45-235(h) of the Parade ordinance provides that "[n]o person shall be issued more than one of the two[2] permits available for any calendar day." The city explained that this regulation is the direct result of two acrimonious groups who vie yearly to hold the sole Martin Luther King day parade in the city.

---

[2] Although section 45-235(h) refers to two possible parade permits, other parts of the ordinance dictate, and the city confirms, that a total of four permits may be issued city-wide per day with only one of those being issued for downtown. *See* Parade Ordinance, Section 45-235(g).

28.     Section 45-235(i) sets forth an elaborate arbitration procedure for settling conflicts between groups for parade days and times.

29.     Section 45-238 lists the reasons for which the director of public works may deny a parade application. Sections 45-238(a) through 45-238(b)(4) list a series of objective factors for denial, like application errors, unwillingness to cooperate with parade rules, inexperience at operating parades, and interference with city police, fire and public works services.

30.     Section 45-238(b)(5) allows the director to deny a parade application if "[t]he parade will unreasonably interfere with public mobility or otherwise substantially inconvenience the public." The ordinance does not define the terms "unreasonable interference," or "substantial inconvenience."

31.     Local 5 submitted an application for a parade to be held on a Saturday afternoon in the Galleria area. The city denied the application based, in part, on section 45-238(b)(5), and in part on the length of the parade.

32.     Section 45-238(b)(6) allows the director to deny a parade application if "[t]he parade will create the imminent possibility of violent disorderly conduct likely to endanger public health or safety or to result in significant property damage." Section 45-238(b)(6). The ordinance does not further define any of those terms.

33.     The Parade Ordinance also contains provisions specifying times, dates, and places parades may be held. Among those is the restriction that downtown parades on non-holiday weekdays must be held for one hour only either at 11:00 a.m. or 2:00 p.m. Section 45-233(b)(1)-(2). A city engineer testified that there was a significant increase in traffic in the downtown area during morning and evening rush hours. Although he testified that there was also a surge in traffic at the noon hour, he testified that the increase was not as significant as at rush hour. He offered no empirical evidence to support any noon hour increase.

34.     Local 5 submitted an application for a downtown parade to be held at noon. The city denied the application based on section 45-233(b)(2).

35.     Local 5 argues that the Parade Ordinance is facially unconstitutional because it constitutes an impermissible prior restraint of the First Amendment rights to free speech and assembly. By defining the term parade to include any number of people, limiting parade times and places so significantly, and restricting groups to no more than one parade permit per day, Local 5 claims that the Parade Ordinance is not narrowly tailored enough to be constitutional.

36.     The city argues that the Parade Ordinance is a reasonable time, place, and manner regulation of conduct that is narrowly tailored to serve a significant government interest. The city urges that the government interest in the safe flow of traffic into and out of Houston's extremely busy downtown area merits the limitations of time, place, and manner contained in the Parade Ordinance.

## CONCLUSIONS OF LAW

1.      In order to prevail on a motion for preliminary injunction, a party must show: (1) a substantial likelihood of success on the merits; (2) a substantial threat that it will suffer irreparable injury if the injunction is denied; (3) the potential injury outweighs any damage that the injunction may cause the non-moving party; and (4) granting the preliminary injunction will not disserve the public interest. *See Guy Carpenter & Co., Inc. v. Provenzale*, 334 F.3d 459, 464 (5th Cir. 2003); *Evergreen Presbyterian Ministries Inc. v. Hood*, 235 F.3d 908, 918 (5th Cir. 2000).

2.      A preliminary injunction is an extraordinary remedy which will only be granted if the movant has clearly carried the burden as to all four elements. *Guy Carpenter*, 334 F.3d at 464; *Evergreen Presbyterian*, 235 F.3d at 917.

**Substantial Likelihood of Success**

3.  The court finds that Local 5 has a substantial likelihood of prevailing on the merits of its claims regarding the Sound and Parade Ordinances.

**A. The Sound Ordinance**

4.  The court finds that Local 5's claim that the Sound Ordinance is a violation of the First Amendment's protection of expression has a substantial likelihood of success, because the ordinance is unconstitutionally vague.

5.  "The First Amendment protects the use of sound equipment as a form of expression." *Beckerman v. City of Tupelo*, 664 F.2d 502, 511 (5th Cir. 1981). "The right to use sound equipment, however, is subject to reasonable regulation by the government." *Id.* "State and local government have a legitimate interest in regulating the use of sound equipment to accommodate the needs of the community as well as the speaker." *Id.*

6.  "Municipalities may impose reasonable time, place, and manner restrictions on the use of sound equipment, provided the regulations are narrowly tailored to further significant government interests." *Id.* at 516 (internal citations omitted). However, the "city is not required to adopt the least restrictive means" for achieving its purpose. *Reeves v. McConn*, 631 F.2d 377, 386 (5th Cir. 1980).

7.  The court finds that City of Houston Sound Ordinance, Section 30-8, as written, is content neutral. The "ordinance does not authorize a licensor to pass judgment on the content of speech: None of the grounds for denying a permit has anything to do with what a speaker might say." *Thomas v. Chicago Park Dist.*, 534 U.S. 316, 322, 122 S.Ct. 775, 779 (2002).

8.  But, "even content-neutral time, place, and manner restrictions can be applied in such a manner as to stifle free expression." *Id.*, 534 U.S. at 323, 122 S.Ct. at 780.

9. A law is unconstitutionally vague if "it subjects the exercise of the right of [expression] to an unascertainable standard." *Coates v. City of Cincinnati*, 402 U.S. 611, 614, 91 S.Ct. 1686, 1688 (1971). Additionally, "[l]aws which vest public officials with unlimited discretion are void for vagueness." *Beckerman,* 664 F.2d at 511.

10. The court finds that although, in theory, the decibel regulations contained in Sound Ordinance Sections 30-6 and 30-8 set an ascertainable standard, in practice the ordinances have not been applied with the precision demanded by the Constitution. *See* Findings of Fact 13-15 *supra*. Therefore, the court finds that City of Houston Sound Ordinance Section 30-8 is unconstitutionally vague, because amplified sound is "continually subject to summary suspension through the good faith enforcement of a prohibition." *Coates*, 402 U.S. at 615, 91 S.Ct. at 1689. The practical ascertainability of the decibel levels contained in the ordinance "contains an obvious invitation to discriminatory enforcement." *Id.*

11. Accordingly, the court finds that Local 5 has a substantial likelihood of prevailing on the merits of its suit against the City of Houston with regard to Sound Ordinance Section 30-8, as applied.

### B. The Parade Ordinance

12. The court finds that Local 5's claim that the City of Houston Parade ordinance constitutes an impermissible prior restraint on protected expression has a substantial likelihood of success on at least one of several theories.

13. First, the definition of parade is not narrowly tailored, because it applies to as few as two persons, and it exempts funeral processions and motorcades based on content.

14. When reviewing a parade ordinance that required "a prior permit for the activity of as few as two people," the Fifth Circuit concurred with other circuits "that ordinances requiring a permit

for demonstrations by a handful of people are not narrowly tailored to serve a significant government interest." *Knowles v. City of Waco*, 462 F.3d 430, 436 (5th Cir. 2006) (citing similar holdings from the Eighth, Ninth and D.C. Circuits).

15.     In both *Knowles* and *Beckerman*, the Fifth Circuit struck down parade ordinance containing exemptions for funeral processions. *Id.*; *Beckerman*, 664 F.2d 513, 517. Because the cities of Tupelo and Waco were willing to ignore the traffic problems caused by funeral processions, but not those caused by parades, the court found it could not accept traffic and pedestrian safety as a significant government interest. *Id.*

16.     "Differential treatment of groups based on the content of their speech is established to be unconstitutional." *Beckerman*, 664 F.2d at 514 (citing *Police Dept. of Chicago v. Mosley*, 408 U.S. 92, 95-98, 92 S.Ct. 2286, 2289-91 (1972) and *Cox v. Lousiana*, 379, U.S. 536, 581, 85 S.Ct. 453, 470 (1965)).

17.     Accordingly, the court finds a substantial likelihood of success for Local 5's claim that the Parade Ordinance is not narrowly tailored because it may include groups of only two persons, and serves no significant government interest because it exempts funeral processions and government approved motorcades. *See* Findings of Fact 19-24 *supra*.

18.     Alternatively, the Parade Ordinance is unconstitutional because it grants unfettered discretion to the director to deny parade permits if, in the director's opinion, the parade will "create the imminent possibility of violent disorderly conduct," "unreasonably interfere with public mobility," or "substantially inconvenience the public." Parade Ordinance, Section 45-238(b)(5)-(6).

19.     "There is a host of Supreme Court cases dealing with the 'hecklers' veto.' In almost every instance it is not acceptable for the state to prevent a speaker from exercising his constitutional rights because of the reaction to him by others." *Beckerman*, 664 F.2d at 509. "The fact that some speech

may stir listeners to disagree—perhaps even to disagree violently—does not by that fact alone permit regulation." *Id.* at 510 (quoting *Wiegard v. Seaver*, 504 F.2d 303, 306 (5th Cir. 1974)).

20. "If the permit scheme involves appraisal of facts, the exercise of judgment, and the formation of an opinion, by the licensing authority, the danger of censorship and of abridgment of our precious First Amendment freedoms is too great to be permitted." *Forsyth County v. The Nationalist Movement*, 505 U.S. 123, 131, 112 S.Ct. 2395, 2401-02 (1992) (internal citations omitted).

21. In *Shuttlesworth*, the Supreme Court invalidated a Birmingham parade ordinance because "in deciding whether or not to withhold a permit, the members of the Commission were to be guided only by their own ideas of 'public welfare, peace, safety, health, decency, good order, morals or convenience.'" *Shuttlesworth v. City of Birmingham*, 394 U.S. 147, 150, 89 S.Ct. 935, 938 (1969).

22. Similarly, in *Beckerman*, the Fifth Circuit invalidated a Tupelo parade ordinance that allowed the Chief of Police to deny a permit, if he felt the parade would "provoke disorderly conduct." *Beckerman*, 664 F.2d at 507. "Such punishment or curtailment of First Amendment rights must be based on a present abuse of rights, not a pre-nascent fear of future misconduct." *Id.* at 510.

23. Therefore, the court finds that Local 5's claim that City of Houston Parade Ordinance, Sections 45-238(b)(5)-(6) constitutes an impermissible prior restraint on protected expression has a substantial likelihood of success. *See* Findings of Fact 29-32 *supra*.

24. Also alternatively, the Parade Ordinance is unconstitutional because it allows a group to have only one parade permit per day, although four are available. Parade Ordinance, Section 45-235(h).

25. "The guidelines used by a licensor in granting or refusing a permit [] must be related to the legitimate government interest in protecting health, safety, and welfare, and must be precisely and narrowly drawn to prevent discretionary decision-making." *Beckerman*, 664 F.2d at 509.

26. The court finds that the city has failed to articulate any interest relating to health, safety, and welfare to which the prohibition in section 45-235(h) applies. *See* Findings of Fact 27-28 *supra*. Thus, the court finds that Local 5 has a substantial likelihood of success in its claim that the City of Houston Parade Ordinance is not narrowly tailored to serve a significant government interest.

### Irreparable Injury, Balance of Injuries, & the Public Interest

27. "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373, 96 S.Ct. 2673 (1976); *Carico Investments, Inc. v. Texas Alcoholic Beverage Com'n*, 439 F.Supp.2d 733, 750 (S.D.Tex.,2006).

28. The necessity of having one's voice heard promptly in a process like union bargaining may not be defeated by slow-moving procedures. *See Houston Peace Coalition v. Houston City Council*, 310 F.Supp.457, 460 (S.D.Tex. 1970) (citing *Shuttlesworth*, 394 U.S. at 163, 89 S.Ct. at 945 (Harlan, J., concurring)).

29. The court finds that Local 5's loss of First Amendment freedom would be irreparable injury, as a matter of law. Additionally, the court finds that the 10 day waiting period for application decisions compounds the injury in this case, due to the time-sensitive nature of the union contract negotiations.

30. The city argues that the potential chaos that could ensue should the court enjoin enforcement of the entire Parade Ordinance outweighs the First Amendment concerns the ordinance raises.

31. The court agrees that the total suspension of the Parade Ordinance would be imprudent, and since the purpose of a preliminary injunction is to retain the status quo of the litigants leading up to litigation, the court found it appropriate to enjoin only certain portions of the Parade Ordinance and only as applied. *See Hollon v. Mathis Indep. Sch. Dist.*, 491 F.2d 92, 93 (5th Cir. 1974).

32.     An as applied injunction will strike an appropriate balance between the interest of the public in protecting their First Amendment rights and the interests of the government in the safety of its vehicular and pedestrian traffic.

## CONCLUSION

The court issued a preliminary injunction on October 24, 2006 enjoining the city from enforcing the Sound Ordinance, Section 30-8 and Sections 45-235(h), 45-238(b)(5), and 45-238(b)(6) of the Parade Ordinance and requiring the city to notify Local 5 of any application decisions made under Parade Ordinance Sections 45-235(b)(1) and (2) within 2 business days based on the Findings of Fact and Conclusions of Law set out here.

Signed at Houston, Texas on November 2, 2006.

_____
Gray H. Miller
United States District Judge